UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| PLASTIC POLLUTION COALITION, a project of EARTH ISLAND INSTITUTE, a non-profit corporation, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 3:14-cv-3890 NC |
| v. | ) ) | |
| PENTAIR THERMAL MANAGEMENT, LLC | ) ) ) | |
| Defendant. | ) ) | |

**CONSENT DECREE**

WHEREAS, Plastic Pollution Coalition ("PPC"), a project of the not-for-profit corporation Earth Island Institute ("EII"), is a global alliance of individuals, organizations, and businesses working towards a world free of plastic pollution and its toxic impacts to humans, animals, and the environment, and EII is dedicated to protecting and preserving the environment;

WHEREAS, Pentair Thermal Management, LLC ("Pentair"), operates industrial facilities throughout the United States and the world that manufacture heat trace management systems, fire and performance wiring, and leak detection products for industrial, commercial, and residential applications which manufacturing involves the use of plastic;

WHEREAS, PPC and Pentair are collectively referred to as the "Parties";

WHEREAS, Pentair has a manufacturing facility located in Redwood City, California, at the following addresses: 2555 Bay Road; 2501 Bay Road; 2415 Bay Road; 947 Douglas Avenue; and 899 Broadway (the "Facility");

WHEREAS, storm water discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 (State Water Resources Control Board ("State Board")), California Regional Water Quality Order No. 91-13-DWQ (as amended by Water Quality Orders Nos. 92-12-DWQ, 97-03-DWQ, and 2014-0057-DWQ), and any future iterations of this permit which are adopted by the State Board, issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §1342 (hereinafter the "Permit");

WHEREAS, the Permit includes the following requirements for all permittees, including Pentair: 1) develop and implement a storm water pollution prevention plan ("SWPPP"); 2) control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") to prevent or reduce pollutants; 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP; 4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards; and 5) sample and accurately report stormwater discharges each year;

WHEREAS, on May 1, 2014, PPC served Pentair, Pentair's registered agent, the Administrator of the Environmental Protection Agency ("EPA"), the Executive Director of the State Board, the Executive Officer of the San Francisco Bay Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA for Region 9 with a notice of intent to file suit ("60-Day Notice") under Sections 505(a)(1) and (f)

Case 3:14-cv-03890-NC  Document 15  Filed 12/29/14  Page 3 of 16

of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365, alleging violations of the Act and the Permit at the Facility;

WHEREAS, Pentair believes it has met the requirements for a No Exposure Certification and filed same with the Regional Board;

WHEREAS, PPC does not believe Pentair qualifies for or has met the requirements for a No Exposure Certification;

WHEREAS, the PPC has filed a Complaint against Pentair in the United States District Court, Northern District Court of California, entitled *Plastic Pollution Coalition, a project of Earth Island Institute v. Pentair Thermal Management, LLC*;

WHEREAS, PPC contends in its 60-Day Notice and Complaint that, among other things, Pentair has repeatedly discharged polluted storm water in violation of the Permit and the Clean Water Act, and Pentair denies all allegations set forth in the 60-Day Notice and Complaint and contends that PPC's Complaint should be dismissed;

WHEREAS, the Parties, through their authorized representatives and without either adjudication of PPC's claims or any admission by Pentair of any alleged violation or other wrongdoing, believe it is in their mutual interest and choose to resolve in full PPC's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I. COMMITMENTS OF PENTAIR

1. **Compliance with Stormwater Permit:** As of the Effective Date of this Consent Decree and continuing thereafter during the Term of the Consent Decree, Pentair agrees to comply

with all conditions of the Permit and any successor, modified, or replacement permit that authorizes discharges from the Facility. In addition, Pentair shall register for Notice of Intent coverage under the Permit, as revised by Water Quality Order 2014-0057-DWQ ("2014 Permit"), by July 1, 2015. Nothing in this Agreement shall be interpreted to require Pentair to violate its obligations under the Permit.

2. **Handling of Plastics:** Beginning on the Effective Date and continuing thereafter during the Term of the Consent Decree, Pentair shall comply with all terms of the Permit that apply to Plastics Facilities.

3. **Monitoring and Sampling:** Beginning on the Effective Date and continuing thereafter during the Term of the Consent Decree, Pentair, through a Qualified Industrial Storm Water Practitioner ("QISP"),[1] shall perform the Monitoring Program and Reporting Requirements outlined in the Permit. Monitoring is a condition of this Consent Decree, irrespective of whether Pentair is required to do so under the Permit ("Monitoring"). During the Term of the Consent Decree, Pentair agrees to perform sampling and analysis as defined in the Permit, at a minimum, at each of the three outfalls identified in Exhibit 1 to this Consent Decree, for the following parameters: Total suspended solids ("TSS"); pH; specific conductance; total organic carbon ("TOC") or Oil and grease ("O&G"); Copper ("Cu"); Antimony ("Sb"); Aluminum ("AL"); Iron ("Fe"); and Zinc ("Zn"). All storm water samples collected pursuant to this paragraph shall be: (1) analyzed by a laboratory accredited by the State of California's Environmental Laboratory Accreditation Program ("ELAP"); (2) delivered to the laboratory in accordance with an appropriate protocol to ensure the integrity of the samples; and (3) analyzed with laboratory methods adequate to detect the individual constituents at or below the values specified in the

---

[1] This term is defined in Section IX of Water Quality Order 2014-0057-DWQ.

Permit. Pentair will provide complete results from all of Pentair's sampling and analysis to PPC within thirty (30) days of receipt of the laboratory report from each sampling event.

4.      **Reporting**: During the Term of the Consent Decree, and in addition to the reports provided to PPC in paragraph 3 above, Pentair shall also provide PPC with a copy of all reports and documents submitted to the Regional Board or the State Board concerning the Facility's compliance with the Permit, including, but not limited to, any Non-Exposure Certification, at the time they are submitted to the Regional Board or the State Board. In addition, during the Term of this Consent Decree, Pentair shall provide PPC with a copy of any new or revised SWPPP or Monitoring and Reporting Program ("MRP") prepared for the Facility within thirty (30) days of its preparation.

5.      **Inspections by PPC**: After the Effective Date of this Consent Decree, Pentair shall allow PPC to inspect the Facility two (2) times each calendar year. PPC shall provide Pentair with at least five (5) business days' notice of proposed inspection dates and the Parties shall work together to select a mutually agreeable inspection date and time. The scope of the inspections shall be the same as the inspection conducted by PPC on June 1, 2014.

6.      **Revised SWPPP**: At any time during the term of the Consent Decree, if Pentair revises its SWPPP, it shall provide a copy of the revised SWPPP to PPC within thirty (30) days of the revision or at the same time that Pentair submits any such revised SWPPP to the Regional Board or State Board, whichever is earlier,

7.      **Exceedance Response Actions**: If during the Term of the Consent Decree Pentair's Monitoring reveals conditions that require preparation of a report pursuant the Permit, then Pentair shall provide a copy of each such report to PPC within thirty (30) days of its preparation or at the same time that Pentair submits any such report to the Water Board, whichever is earlier.

## II.    MITIGATION, FEES, AND COSTS

8.    **Environmental Mitigation Funding**: As mitigation for the alleged violations set forth in PPC's Notice and Complaint, within thirty (30) days of the Effective Date, Pentair shall pay the sum of fifteen thousand dollars ($15,000) to the California State Parks Foundation ("Foundation"), an environmental non-profit organization, for projects that will benefit the San Francisco Bay watershed. The Foundation shall report the grant funding made with the tendered funds to the Court, U.S. Department of Justice, and the Parties, setting forth the recipient and purpose of the funds. Payment shall be made to the California State Parks Foundation, 50 Francisco Street, Ste 110, San Francisco, CA 94133, within thirty (30) days of the Effective Date, with notice to PPC.

9.    **Reimbursement of Fees and Costs**: Pentair shall reimburse PPC in the amount of fifty-five thousand dollars ($55,000) to help defray PPC's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to Pentair's attention, and negotiating a resolution of this action in the public interest. Pentair shall tender said payment, payable to PPC, within thirty (30) days of the Effective Date. Pentair agrees to tender said payment, payable to the Law Offices of James Birkelund Attorney Client Trust Account.

10.    **Compliance Monitoring Funds**: Pentair shall reimburse PPC five thousand dollars ($5,000) to help defray PCC's reasonable costs associated with monitoring Pentair's compliance with this Consent Decree over the next 24 months, including the costs of PCC for the costs and fees of site visits to the Facility described above. The compliance monitoring fund payment shall be made payable to PPC within thirty (30) days after the Effective Date. Pentair agrees to tender said payment, payable to the Law Offices of James Birkelund Attorney Client Trust Account.

11.     **Dispute Resolution**: If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule to meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least ten (10) business days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of California which shall retain jurisdiction of this matter for the limited purpose of enforcing the terms of this Consent Decree. The parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d), and applicable case law interpreting such provisions.

## III.     JURISDICTION OVER PARTIES AND SUBJECT MATTER OF THE CONSENT DECREE

12.     **Jurisdiction**: For the purposes of this Consent Decree, the Parties stipulate that the United States District Court for the Northern District of California has jurisdiction over the Parties and subject matter of this Consent Decree. The Parties stipulate that venue is appropriate in the Northern District of California and that Pentair will not raise in the future, as part of enforcement of this Consent Decree, whether PPC has standing to bring the Complaint or any subsequent action or motion pursuant to the Dispute Resolution procedures herein.

13.     **Submission of Consent Decree to DOJ**: Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, PPC shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40

C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period. In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

## IV. WAIVER, RELEASES AND COVENANTS NOT TO SUE

14. **PPC Waiver and Release of Noticed Parties and Covenant Not to Sue**: Upon the Effective Date, PPC, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns and its agents, attorneys, and other representatives, covenants not to sue Pentair or its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or its agents, attorneys, or other representatives with respect to any storm water discharges from the Facility that arose before or may arise during the Term of this Consent Decree. PPC, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns, and its agents, attorneys, and other representatives, releases Pentair and its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or its agents, attorneys, and other representatives from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint. PCC further agrees that, beginning on the Effective Date and ending on the Termination Date, PPC, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns and its agents, attorneys, and other representatives, will not support in any way other lawsuits, by providing financial assistance, personnel time or other affirmative actions, against Pentair for the Facility that may be proposed by other individuals, groups or other entities,

including the State or Federal government, who would challenge Pentair's compliance with the Clean Water Act or the General Permit at the Facility; provided, however, that the foregoing shall not restrict any disclosure of information or other actions if required by law or regulation or in a judicial or administrative proceeding; and provided, further, that the foregoing shall not apply to PPC attorneys to the extent it contravenes or conflicts with California Rules of Professional Conduct (including Rules 1-500 and 5-220). Further, all confidentiality obligations on PPC and its counsel, including any confidentiality stipulated to by PPC and its counsel during the course of this litigation, shall continue in effect, even after the Termination Date of this Consent Decree.

15.    **Pentair's Waiver and Release of PPC**: Pentair, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or its agents, attorneys, and other representatives, releases PPC and EII and their respective officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns and its agents, attorneys and other representatives from, and waives any claims against PPC and EII, including claims that might arise from or pertain to, the 60-Day Notice and/or the Complaint for pollution from storm water discharges at the Facility, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

16.    **No Admission**: The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Nothing in this Consent Decree shall be construed as, and Pentair expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by Pentair of any fact, finding, conclusion, issue of law, or violation of law. However,

this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

## V.    MISCELLANEOUS PROVISIONS

17.    **Effective Date**:  The Effective Date of this Consent Decree shall be upon the entry of the Consent Decree by the Court.

18.    **Term of Consent Decree**:  This Consent Decree shall continue in effect for twenty-four (24) months following the Effective Date, at which time the Consent Decree, and all obligations under it, shall automatically terminate.

19.    **Execution in Counterparts**:  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

20.    **Facsimile or PDF Signatures**:  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission in portable document format (PDF) shall be deemed binding.

21.    **Construction**:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

22.    **Authority to Sign**:  The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

23.    **Integrated Consent Decree**:  All agreements, covenants, representations, and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

24.     **Severability**: In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

25.     **Choice of Law**: This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

26.     **Full Settlement**: This Consent Decree constitutes a full and final settlement of this matter. It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

27.     **Negotiated Agreement**: The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

28.     **Modification of the Agreement**: This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

29.     **Assignment**: Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

30.     **Mailing of Documents, Notices, and Correspondence**:     Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the email addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail or overnight delivery with return receipt, or by hand delivery to the following addresses:

**For PPC:**

Gary A. Davis
Davis & Whitlock, P.C.
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Email: gadavis@enviroattorney.com

*With copies sent to*:

James Birkelund
548 Market St., #11200
San Francisco, CA 94104
Email: james@birkelundlaw.com

**For Pentair:**

Allan Crider
Associate General Counsel--Litigation
5500 Wayzata Blvd, Suite 800
Minneapolis, MN 55416
Email: allan.crider@pentair.com

*With copies sent to*:

Adam G. Sowatzka
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Email:  asowatzka@kslaw.com

Notifications of communications shall be deemed submitted on the date that they are emailed or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any changes of address or addressees shall be communicated in the manner described above for giving notices.

31.     **Impossibility of Performance**: No Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible, despite the timely good faith efforts of the Party, due to circumstances beyond the Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, flood, and restraint by court order or public authority.  "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship, or inability to pay.  Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

32.     If for any reason the DOJ or the District Court should object to this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court, while preserving to the maximum extent the substantive obligations set forth in this proposed consent decree.  If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

33.     The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

[SIGNATURES TO APPEAR ON THE FOLLOWING PAGES]

Plastic Pollution Coalition

Date: November __5__, 2014

John A. Knox
Vice President and Executive Director
Earth Island Institute

Pentair Thermal Management, LLC

Date: November __4__, 2014

J. Brad Whitus
Associate General Counsel

APPROVED AND SO ORDERED, this __29_ day of ___December, 2014_____.

UNITED STATES DISTRICT JUDGE



IT IS SO ORDERED

Judge Nathanael M. Cousins

## Exhibit 1: Outfalls





### STORMWATER NOTES

- ALL WASTE AND RECYLING BINS SHALL BE TARPED OR LIDDED AT THE END OF EACH WORK DAY AND IN ANTICIPATION OF FORECASTED RAIN EVENTS.
- ALL SIGNIFICANT MATERIALS TRANSPORTED BETWEEN BUILDINGS SHALL BE IN COVERED OR SEALED CONTAINERS.
- AS A "NO EXPOSURE" FACILITY, SAMPLING IS NOT REQUIRED AND NO SAMPLING LOCATIONS HAVE BEEN IDENTIFIED. IN THE EVENT OF AN ACCIDENT OR SPILL, SAMPLING LOCATIONS SHALL BE FIELD-DETERMINED BASED ON VISUAL OBSERVATION OF FLOW.